**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

EDWARD PRIMOFF et al.      *
                           *
     v.                    *  Civil Action WMN-07-2844
                           *
KENNARD WARFIELD, JR. et al.  *

\* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM**

Following a jury verdict in favor of Plaintiffs, Defendants filed the instant motion for judgment as a matter of law under Federal Rule of Civil Procedure 50, for a new trial under Rule 59, or for an amended judgment. ECF No. 102. The parties have fully briefed the motion and it is ripe for a decision. Upon consideration of the facts and arguments presented by counsel, the Court finds that Defendants' motion must be denied.

**I.   BACKGOUND**

In 2002, Plaintiffs sought to develop a portion of a large plot of land they owned. To do so, Plaintiffs and Defendants entered into an agreement whereby Plaintiffs conveyed the entire plot of land to Defendants. Defendants were then to develop a small portion of the land and re-convey the undeveloped land (Resulting Lands) back to Plaintiffs upon completion of the project. The agreement required Defendants to re-convey the Resulting Lands free from any encumbrances that did not exist prior to the agreement.

While developing a portion of the land, Defendants installed an easement on the Resulting Lands. In late 2004, Defendants re-conveyed the now-encumbered Resulting Lands to Plaintiffs, a transaction which included the execution of a warranty of title. Plaintiffs objected to the easement and instituted litigation to extinguish it. In May 2005, with the easement still in place, Plaintiffs sought to sell the Resulting Lands at auction. Plaintiffs received several offers through the auction, the highest of which was for $5.2 million. Nonetheless, Plaintiffs declined to pursue the auction sale any further because they were concerned the improper easement would result in additional litigation. In the words of Edward Primoff, he did not want to "buy[] a lawsuit" by selling the land with an improperly-installed encumbrance.

In 2006, Plaintiffs successfully extinguished the improper easement, but they did not try again to sell the Resulting Lands. Thus, as of the date of trial, Plaintiffs owned all of the Resulting Lands unencumbered by any easements, just as was contemplated by Plaintiffs' original agreement with Defendants. Nevertheless, Plaintiffs claimed a loss. In 2005, Plaintiffs had the value of the Resulting Lands and improvements thereon appraised at $4 million. A subsequent appraisal in 2008 set the value at $3 million. Plaintiffs argued at trial that, as a result of the easement, they suffered lost profits when they

2

were unable to accept the auction bid for $5.2 million in 2005. They also argued diminution of value and averred that efforts to remove the easement entailed $24,000 in legal fees. Consequently, Plaintiffs submitted two theories of recovery arising from the transaction: breach of contract and breach of warranty of title.  The jury returned a verdict in favor of Plaintiffs and awarded $250,000 for breach of contract and a total of $274,000 for breach of warranty.  The verdict form line announcing damages for breach of warranty of title reads "$250,000 + $24,000 = $274,000."  Defendants then filed the instant motion challenging the damages calculations, but Defendants do not challenge the jury's finding of liability.

## II. ANALYSIS

Under Federal Rule of Civil Procedure 50, the Court may grant judgment as a matter of law if it finds that a reasonable jury would not have had a legally sufficient evidentiary basis to find in favor of the non-moving party.  When considering a Rule 50 motion, the non-moving party is entitled to have "the benefit of every legitimate inference [drawn] in his favor." Cline v. Wal-Mart Stores, Inc., 144 F.3d 294, 301 (4th Cir. 1998).  A motion for a new trial under Rule 59 entails a different standard.  Rule 59 enables the Court to order a new trial or amended judgment for various reasons, including "to correct a clear error of law or prevent manifest injustice."

Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998). Nevertheless, granting a motion to amend judgment "is an extraordinary remedy which should only be used sparingly." Id.

Defendants' first argument is that, as a matter of law, Plaintiffs failed to offer any evidence that the easement caused them to suffer any compensable injury. Plaintiffs argued they suffered lost profits when they were unable to sell the Resulting Lands at auction. To recover for collateral lost profits under breach of contract in Maryland, a plaintiff must show (1) that the breach of contract was the cause of the loss; (2) that, when the contract was executed, the defendant could have reasonably foreseen that the lost profits would be a probable result of the breach; and (3) that the lost profits can be proved with certainty. M&R Contractors & Builders v. Michael, 138 A.2d 350, 353 (Md. 1958). When a plaintiff claims lost profits that are merely collateral to the breach of an agreement, the law demands more stringent proof of loss than when a plaintiff claims damages resulting directly from an breach of the agreement. Id. at 353-54.

Drawing all inferences in favor of Plaintiffs, a reasonable jury could have concluded based upon the evidence presented at trial that the alleged lost profits from Plaintiffs' claimed inability to sell the Resulting Lands at auction were

foreseeable.  It is reasonable to infer that a prospective seller may have difficulty selling land that is encumbered by an easement.  It is also reasonable to infer that if a seller conveys improperly-encumbered property to a buyer, the buyer may have difficulty reselling that property thereafter.  Thus, a jury could have inferred that, at the time the parties entered into the agreement, it was reasonably foreseeable to Defendants that if they re-conveyed the Resulting Lands to Plaintiffs with the easement improperly installed, Plaintiffs would have difficulty reselling the Resulting Lands.

Again, drawing all inferences in favor of Plaintiffs, a jury also could have found that Plaintiffs' lost profits were caused by the easement—and thus by Defendants' breach—and that the lost profits were proven with the requisite measure of certainty.  Plaintiffs testified that they were unable to complete the auction for $5.2 million in 2005 due to the easement and that, as of 2008, the Resulting Lands had declined in value to $3 million.  While there was little or no testimony that the easement was the direct cause of the loss of value, a jury could have made this reasonable inference.  In sum, Plaintiffs presented evidence sufficient for a reasonable jury to find they suffered lost profits, and when "a reasonable jury could return a verdict in favor of plaintiffs, the court must defer to the judgment of the jury, even if the court's judgment

5

on the evidence differs." Duke v. Uniroyal Inc., 928 F.2d 1413, 1417 (4th Cir. 1991).

Defendants' second argument is that the jury improperly awarded Plaintiffs duplicative damages for the same injury. In Maryland, "the measure for damages for the breach of an express warranty in the sale of real property is the same as the measure of damages for breach of contract." Hall v. Lovell Regency Homes Ltd. P'ship, 708 A.2d 344, 350 (Md. Ct. Spec. App. 1998). Thus, damages under both theories of recovery "seek to vindicate the promisee's expectation interest." Id. (internal citation omitted). In this case, the jury was given a verdict form that asked them to assign a dollar amount for damages stemming from the breach of contract claim on line 2 of the verdict form, and from the breach of warranty of title claim on line 4 of the verdict form. See ECF No. 89. As noted above, the jury awarded $250,000 and $274,000 for each respective claim. Defendants, however, argue that this is legally improper because both theories of recovery should have afforded identical relief as a matter of law, such that awarding the same amount twice would amount to impermissible duplicative damages.

The Second Circuit explained the following with respect to allegedly inconsistent answers on a special verdict form:

> A district court has a duty to reconcile the jury's answers on a special verdict form with any reasonable theory consistent with the evidence, and to attempt to

> harmonize the answers if possible under a fair reading of those answers. The court must search for a reasonable way to read the verdicts as expressing a coherent view of the case, and if there is any way to view a case that makes the jury's answers to the special verdict form consistent with one another, the court must resolve the answers that way even if the interpretation is strained."

<u>McGuire v. Russell Miller, Inc.</u> 1 F.3d 1306, 1311 (2d Cir. 1993) (internal citations omitted); <u>see also</u>, <u>Bristol Steel & Iron Works v. Bethlehem Steel Corp.</u>, 41 F.3d 182, 190 (4th Cir. 1994). Moreover, the Court must presume that the jury correctly adhered to the jury instructions. In this case, the Court specifically instructed the jury that "you may not award damages that would duplicate any damages that may have been already . . . awarded on a separate claim." ECF No. 102-5 at 181.

Here, it is plausible that the jury intended to award Plaintiffs a total of $500,000 in collateral lost profits, plus an additional $24,000 to compensate Plaintiffs for the costs incurred to remove the easement. In this way, the jury may have determined that the total harm caused by Defendants' liability was $524,000, after which the jury merely apportioned the damages among the two claims. Thus, the Court finds that there is a reasonable explanation to reconcile the jury's answers, and Defendants' motion with respect to the allegedly duplicative damages will be denied.

Last, Defendants argue Plaintiffs failed to mitigate damages when they failed to more aggressively pursue the sale of the Resulting Lands at auction. In Maryland, a party need not accept an unreasonable risk of additional loss in an effort to mitigate a loss already sustained. Cave v. Elliott, 988 A.2d 1, 19 (Md. Ct. Spec. App. 2010). Edward Primoff testified he did not pursue the auction sale because he did not want to accept the risk of another lawsuit from the purchaser. Based upon that testimony, a reasonable jury could have inferred that the sale would have caused Plaintiffs to accept an unreasonable additional risk. Thus, it was reasonable for the jury to find that Plaintiffs did not fail to mitigate their damages.

## III. CONCLUSION

For the foregoing reasons, Defendants' motion, ECF No. 102, will be denied. The Court will issue a separate order to that effect.

_____/s/_____
William M. Nickerson
Senior United States District Judge

August 30, 2011

8